IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:19-CV-65-FL

| | | |
|---|---|---|
| JAMES A. CANNON, JR., and NANCY G. CANNON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (DE 12). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion is granted for lack of subject matter jurisdiction.

## STATEMENT OF THE CASE

Plaintiffs initiated this action on April 30, 2019, alleging defendant is liable for negligently creating and maintaining certain premises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–80. Defendant filed the instant motion to dismiss, arguing that the FTCA does not waive sovereign immunity in the instant case because defendant hired an independent contractor, and in any event the design and construction of the premises is a discretionary function of the government. In support of its jurisdictional arguments, defendant relies upon the declaration of Leanna Radford ("Radford"), Fleet Readiness Center East ("FRCE") Deputy Logistics and

Industrial Operations Group Head, together with supporting documents. Plaintiffs responded in opposition to the motion, relying upon testimony from Ronnie A. Acha ("Acha"), director of operations at plaintiff James Cannon's jobsite; Ashraf Guirgues ("Guirgues"), plaintiff James Cannon's treating doctor; and supporting exhibits.

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows. Plaintiff James Cannon worked at FCRE as an aviation fuel truck operator for an aviation fuel subcontractor in Craven County, North Carolina. (Compl. ¶ 7). Plaintiff James Cannon was responsible for getting fuel trucks ready to fuel aircraft. (Id.).

Fuel creates static electricity when moved, requiring fuel truck operators to ground the fuel truck using a grounding cable, ground connector clip, and a ground point to ensure the safety of personnel and equipment. (Id. ¶ 8). Plaintiff James Cannon clocked into work at approximately 6:50 a.m. on March 21, 2014. (Id. ¶ 9). While attending to his duties, plaintiff James Cannon attempted to ground his fuel truck by attaching a grounding cable from the fuel truck to an aircraft tie down. (Id.). Afterwards, plaintiff James Cannon drained water-contaminated fuel from his fuel truck. (Id.). While carrying the contaminated fuel in a plastic bucket to dump it, he stepped on the grounding cable with his right foot. (Id.). Plaintiff James Cannon felt a shock in his right leg, and the next thing he remembered he was laying on the ground experiencing pain in his lower right leg. (Id.).

Plaintiff James Cannon told Acha, his supervisor, of the incident. (Id. ¶ 10). Acha and Walter Taylor ("Taylor"), the division director in charge of work done at the site, walked to the site a few hours after the reported incident. (Id. ¶¶ 10, 11). The two found there were no designated grounding rods in the area, that plaintiff James Cannon used an aircraft tie down as a grounding

point, and that the grounding points used were questionable. (Id. ¶ 11). Acha and Taylor recommended that facilities inspect the area to determine the proper grounding needed. (Id.). On April 7, 2014, new static ground points were installed, tested, and certified. (Id. ¶ 12).

Additional facts pertinent to the court's jurisdictional inquiry will be discussed below.

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

B.  Analysis

　　1.  Independent Contractor Exception

It is hornbook law that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's

3

jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941). Where the United States does consent to be sued, that consent "must be 'construed strictly in favor of the sovereign.'" United States v. Nordic Vill. Inc., 503 U.S. 30, 34 (1992) (quoting McMahon v. United States, 342 U.S. 25, 27 (1951)).

The FTCA provides consent to sue the United States, allowing a cause of action "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b)(1). In pertinent part, "[e]mployee of the government" includes officers or employees of any federal agency. Id. § 2671. In turn, the term federal agency specifically "does not include any contractor with the United States." Id. § 2671. "[T]he application of the independent contractor exception of § 2671 shields the United States from tort liability which might otherwise arise from the performance of duties which were reasonably delegated to the contractor." Berkman v. United States, 957 F.2d 108, 113 (4th Cir. 1992).

"Although state law governs the substantive duties of the United States under the FTCA, 28 U.S.C. § 1346(b), whether a person is a contractor or an employee is determined under federal law." Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996) (citing Logue v. United States, 412 U.S. 521, 528 (1973); Berkman, 957 F.2d at 112). Under the FTCA, a contractor is properly characterized as an employee when "its day-to-day operations are supervised by the Federal Government" and the Federal Government has the power "to control the detailed physical performance of the contractor." United States v. Orleans, 425 U.S. 807, 814–15 (1976); Logue v. United States, 412 U.S. 521, 528–29 (1973); Wood v. Standard Prod. Co., 671 F.2d 825, 829 (4th Cir. 1982). "It is the right to control, rather than the actual exercise of control, that is significant." U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC, 899 F.3d 236, 249 (4th Cir. 2018)

4

(emphasis omitted) (quoting ARA Leisure Servs., Inc. v. NLRB, 782 F.2d 456, 460 (4th Cir. 1986)).

In Williams v. United States, the United States Court of Appeals for the Fourth Circuit considered whether the United States was liable for any negligence of the company that provided custodial and maintenance services. 50 F.3d 299, 302 (4th Cir. 1995). The court held the custodian was an independent contractor, noting that the contract for services was a "comprehensive instrument providing that [the custodian] was responsible for the maintenance of the Premises," and "the United States neither supervised nor controlled the day-to-day operations or the custodial duties." Id. at 307. In Wood, the Fourth Circuit concluded that a contract physician was an independent contractor and the government was not liable for medical negligence where the government did not "exercise control over or dictate the day-to-day medical judgment of Dr. Beatley in his provision of medical services." 671 F.2d at 830.

"The fact that an independent contractor may have been responsible for [plaintiff's] fall, however, cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort." Berkman, 957 F.2d at 114. The independent contractor exclusion from the FTCA only preserves sovereign immunity as to those duties which the government has delegated to the contractor. See Parrish v. United States, 157 F. Supp. 3d 434, 440–41 (E.D.N.C. 2016).

In the instant case, defendant hired LSG, an independent contractor, to provide transportation services. (See TSS Contract (DE 14-3) at 4–14; TSS Contract Signature Page (DE 14-4) at 2; Performance Work Statement (DE 14-5) at 35). LSG and defendant agreed that LSG "renders its services in its capacity as an independent Contractor. The contractor shall be solely responsible for any liability producing act or omission by it or its employees or agents."

(Performance Work Statement (DE 14-5) at 24). LSG designated an on-site manager "responsible for the day to-day performance of the work." (Performance Work Statement (DE 14-5) at 12). The government furnished facilities for LSG on an "as is" basis, meaning that "the Government makes no warranty with respect to the serviceability and/or suitability of the property for contract performance." (Performance Work Statement (DE 14-5) at 31; 48 C.F.R. § 52.245–1(d)(2)(iii)). LSG was responsible for determining how to "plan, organize staff, manage, and control work under the contract." (Performance Work Statement (DE 14-5) at 10). This included providing an annual property control plan for accepting or rejecting government furnished services. (Performance Work Statement (DE 14-5) at 31).

LSG's property control plan provided that, prior to accepting government furnished property, LSG would "conduct an inspection of the Government Facilities provided and report any unsafe or non-operational condition to the COTR within five days." (Property Control Plan (DE 14-7) at 2). The plan further provided that, "[a]s repairs are needed during the performance period," LSG would submit repair requests to the government, who was responsible for maintenance of real property. (Property Control Plan (DE 14-7) at 2; Performance Work Statement (DE 14-5) at 26, 32). In addition, LSG also contracted so that it could "provide alterations or improvements to [its] assigned facilities" at its own expense, provided it secured the concurrence of the Government. (Performance Work Statement (DE 14-5) at 32). Finally, LSG was required to "report any unsafe or non-operational condition of the [government furnished facilities] to the [contracting officer's representative] within [five] calendar days of becoming aware of said conditions." (Performance Work Statement (DE 14-5) at 28, 32). After receiving notice from LSG, the contracting officer's representative was to "resolve any unsafe or non-operational

condition . . . within 20 calendar days of report of these conditions." (Performance Work Statement (DE 14-5) at 32).

Here, plaintiff James Cannon "attempted to ground the fuel truck by attaching a grounding cable from the fuel truck to an aircraft tie down" and sustained injury "when he stepped with his right foot on to a grounding cable, attached to an aircraft tie down used for a grounding point." (Compl. ¶ 9). Plaintiffs allege that defendant "allowed a dangerous condition to exist within the facility, that is, improper static grounding points, resulting in static electricity causing harm" to plaintiff James Cannon. (Id. ¶ 14). Plaintiffs further allege that defendant "allowed" this condition by "failing to install, identify, designate, inspect, test, measure, maintain, and certify the premises for safe and ordinary use." (Id.).

On these facts, the independent contractor exception bars plaintiffs' claims in part. Defendant provided the premises "as is" to LSG, who was responsible for inspecting the property, as well as proposing and providing at its own expense "alterations or improvements to [its] assigned facilities." (Performance Work Statement (DE 14-5) at 31, 32; 48 C.F.R. § 52.245–1(d)(2)(iii)). The record does not indicate that LSG ever asked for proper static grounding points to be installed. (Radford Decl. (DE 14) ¶ 17). Defendant cannot be held liable for LSG's failure to determine that proper static grounding points were required for its subcontractor to safely perform its work, and ultimately to make necessary changes to the property to protect its workers.

Plaintiffs insist that they are not bringing any claims against defendant for LSG's conduct, but instead are bringing claims against defendant for the conduct of its employees. (Pl. Mem. (DE 15) at 4–7, 8–9). First, plaintiffs argue that the allegations of the complaint are directed against defendant, not LSG. (See Compl. ¶¶ 8, 14). However, defendant's alleged responsibility for the premises is a "factual predicate" underlying plaintiffs' FTCA claim and sovereign immunity, and

7

thus the court may look beyond the pleadings to determine if it has jurisdiction. Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768.

Second, plaintiffs argue that LSG only was responsible for conducting one inspection of the fuel truck parking area, and thereafter defendant was responsible for the safety of the premises. (Pl. Resp. (DE 15) at 10). Plaintiffs overlook the fact that LSG was responsible for reporting "any unsafe or non-operational condition to the [Contract Officer's Technical Representative] within five calendar days of becoming aware of said condition." (Performance Work Statement (DE 14-5) at 28, 32).

Third, plaintiffs point to the government's obligation to perform routine inspections and maintenance as evidence that it should have "maintained" the aircraft tie downs as static ground points. (Pl. Resp. (DE 15) at 10–14; NATOPS Aircraft Refueling Manual (DE 15-5) at 4, 46–47; September 8, 2012 Instruction (DE 15-8) at 1–5). For the reasons explained below, the court rejects plaintiffs' argument.

Fourth, plaintiffs argue that plaintiff James Cannon was not required to obey instruction that aircraft tie downs may be used as static ground points "provided that they have been identified and measured properly." (Pl. Resp. (DE 15) at 12). Plaintiffs' argument misses the mark, because sovereign immunity concerns liability for defendant's acts or omissions, not plaintiffs' conduct. As explained below, the handbook undermines plaintiffs' claim because it demonstrates that aircraft tie downs and static ground points are not the same thing and serve different purposes. (See Electrical Grounding for Aircraft Safety (DE 14-2) at 18).

Defendant is not liable for plaintiffs' injuries arising from LSG's acts or omissions. The court turns to whether defendant is directly liable for not providing static grounding points in the fuel truck parking area.

2. Discretionary Function Exception

The FTCA does not apply to "[a]ny claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To be a discretionary decision, the governmental act or omission must 1) involve an element of judgment or choice, and 2) be based on considerations of public policy. United States v. Gaubert, 499 U.S. 315, 322–23 (1991). As to the second element, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325; Smith v. Washington Metro. Area Transit Auth., 290 F.3d 201, 214 (4th Cir. 2002).

"[W]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Wood v. United States, 845 F.3d 123, 128 (4th Cir. 2017) (emphasis added) (quoting Gaubert, 499 U.S. at 327). "The decision of how and when to replace a major element of a substantial public facility is, like the decisions involving design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy." Baum v. United States, 986 F.2d 716, 724 (4th Cir. 1993); see Bowman v. United States, 820 F.2d 1393, 1395 (4th Cir. 1987). "[W]hen discretionary decisions are ones of professional military discretion, they are due the courts' highest deference." Minns v. United States, 155 F.3d 445, 451 (4th Cir. 1998) (citing Tiffany v. United States, 931 F.2d 271, 277 (4th Cir. 1991)); see Boyle v. United Techs. Corp., 487 U.S. 500, 511 (1988) ("[S]election of the appropriate design for military

equipment to be used by our Armed Forces is assuredly a discretionary function within the meaning of this provision.").

Federal law grants the Secretary of the Navy discretion to carry out "[t]he construction, maintenance, and repair of buildings, structures, and utilities and the acquisition of real property and interests in real property necessary to carry out the responsibilities specified in this section." 10 U.S.C. § 8013(b)(12). The decision of whether to expend resources to provide static grounding points in the fuel truck parking area of FRCE was a discretionary military decision concerning how best to allocate resources. See Boyle, 487 U.S. at 511; Baum, 986 F.2d at 724; (Radford Decl. (DE 14) ¶¶ 3, 18; NATOPS Aircraft Refueling Manual (DE 14-1) at 48). Such a decision is susceptible to policy analysis, and thus within the discretionary function exception under the FTCA. See Gaubert, 499 U.S. at 325.

Plaintiffs argue that defendant is liable because it had a nondiscretionary obligation to maintain the fuel truck parking area. (See Pl. Mem. (DE 15) at 15 (citing Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955))). Plaintiffs point to defendant's obligation to provide preventive maintenance and certify and identify good and bad grounding points. (NATOPS Aircraft Refueling Manual (DE 15-5) at 4; September 8, 2012 Instruction (DE 15-8) at 1–5).

At the outset, the United States Supreme Court has rejected the argument that Indian Towing addresses the FTCA's discretionary function exception. See Gaubert, 499 U.S. at 326. More importantly, negligent maintenance, inspection, or failure to warn was not the source of plaintiffs' injury. Here, the fuel truck parking area did not contain, and was not required to contain, certified grounding points. (Radford Decl. (DE 14) ¶¶ 3, 18; NATOPS Aircraft Refueling Manual (DE 14-1) at 48). Acting within its discretion, defendant delegated LSG responsibility for making alterations to the premises and LSG did not do so. See United States v. S.A. Empresa de Viacao

10

Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 819–20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); Williams, 50 F.3d at 310 ("The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the exception is designed to shield from liability because it involves exercising judgment based on considerations of policy."). Moreover, the government was not obligated to maintain an aircraft tie down as a static ground point. (See Electrical Grounding for Aircraft Safety (DE 14-2) at 18 (emphasis added) (noting that aircraft tie downs "may be used as static ground points provided that they have been identified and measured properly")).

Plaintiffs' argument that defendant generally was required to inspect or maintain the fuel truck parking lot and periodically test static ground points rings hollow. Accordingly, plaintiffs' claims are barred by sovereign immunity.[1]

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss for lack of subject matter jurisdiction (DE 12) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 6th day of December, 2019.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge

---

[1] The court does not reach the issue of whether plaintiffs' complaint fails to state a claim upon which relief can be granted.